Next case on our call today is Agenda No. 5, No. 105206, People v. William Robinson. Counsel, you may proceed. Thank you. Good afternoon, Your Honors. May it please the Court? My name is Linda Olthoff, and I represent William Robinson. William Robinson was charged with first-degree murder. After the jury heard all of the evidence, Robinson decided to waive his right to the jury and asked the Court to find him guilty of the lesser offense of involuntary manslaughter, which is a Class III offense with a sentencing range of two to five years. The Court did impose that offense and imposed the conviction for involuntary manslaughter. The parties returned for sentencing, and for the very first time, the prosecution asked for and the Court agreed to impose conviction and sentence for the Class II offense of involuntary manslaughter of a household member with a sentencing range of two to 14 years. Defense counsel filed a post-trial motion and a motion to reconsider the sentence, and she asserted to the Court that she made strategic decisions knowing that this was a Class III offense. She told the Court she would not have asked for the lesser offense of involuntary manslaughter had she been apprised of this fact. She consulted with her client. They agreed to go for the lesser offense knowing it to be a Class III offense with a sentencing range of two to five years. At what point during the course of the trial did the defense request the involuntary manslaughter consideration? After the evidence had been presented, after the State had presented its case, they decided to waive the jury and ask the Court for the lesser offense. After all of the evidence was in? Yes. Yeah. During closing arguments. Was it during closing arguments that the request was made? I believe it was before closing arguments. At what point should the State then have notified the defendant of the enhancing factor if it had no knowledge that the defendant would be asking for the lesser included offense? The State had a responsibility to give them notice prior to trial. But not in the murder charge. Is that correct? Well, what they should have done is charged him with first-degree murder of a household member because at that point then, involuntary manslaughter of a household member is a lesser included offense of murder. How was the State supposed to contemplate that the defense would be asking for the lesser included offense in the first place? Well, the defense has every right to ask for the- No question about it. Okay. But the State certainly, in determining whether or not they should make disclosures, why would they have made any disclosure before the time that the defendant asks for the lesser included offense? The State would have reason to know based on, as it's preparing for the trial, that the defense is going to argue that this was a case of recklessness and that there were facts that would support a defense asking for involuntary manslaughter because there is evidence of recklessness. If the State wanted available to it the Class II offense of involuntary manslaughter of a household member, it was the State's duty then to charge it as such. The State had every reason to believe that the defense might ask for a lesser offense. But a physical murder is not enhanced by reason of the fact that the victim is a household member, is it? No. No. But it's reasonable to anticipate that Robinson would ask for a lesser offense in this case. So to anticipate that they- If we do that, would it be fair to say, on the other side of the case here, it would be reasonable for the defense to anticipate if they asked for the lesser charge that the State, according to the statute, would have a right to seek to include the household member aspect of it? If they had charged it that way and provided notice. No, no. You're missing my question because I didn't state it very well. You've argued what the State should have envisioned could happen with their case. Would the same be true for the defense envisioning what could happen to their case, and that is that they could be faced with the household member add-on? I don't think it's possible for the defense or fair for the defense to have to anticipate that because nothing about what is included in the statute or the fact that there is this element that could be added on puts this defense on notice of the State's intent. So the defense is going to make strategic decisions based on a guess as to, well, you know, they might go for household member, so maybe I should forego asking for the lesser included offense of involuntary manslaughter. Ms. Althoff, what's the difference between this case and the Green case outside of the replacement of the offense of robbery in Green with involuntary manslaughter in this case? In Green, the defendant was charged with robbery of a person over the age of 60. The fact that the victim was over the age of 60 was also submitted to a jury, and the jury was told that it had to find that fact beyond a reasonable doubt. This court said for purposes of identifying it in the verdict form, it's not a separate offense of robbery. It's not a separate offense from robbery of a person over the age of 60 as charged in the indictment. It was charged in the indictment. It just wasn't identified in the verdict form as such. Well, really there was ultimately a finding, wasn't there, that the nature of the victim was not an element of the offense in Green? Well, for purposes of identifying it in the verdict form, and I think this court, you know, there was an apprentice attack in that case and said, well, an apprentice is not implicated when you get to the stage of the verdict form. What we're looking at is, is it charged so that the defendant has notice and is it submitted to a jury so that they find that additional fact beyond a reasonable doubt? Just as a follow-up, are you suggesting that the household member is an element of the crime? Yes. Yes. And in this case, we would say that the state's failure to provide notice of that element violated Robinson's right to due process, and because it is a well-established principle of our jurisprudence that you cannot be convicted of an uncharged offense unless it is a lesser-included offense. Illinois has used the charging instrument approach to determine whether something is in fact a lesser-included offense, and we look at factual description of the greater offense to see if there is any outline of the facts or conduct necessary to prove the lesser offense. In this case, in the indictment for murder, there was nothing from which Robinson could infer or otherwise that he would be subject at sentencing that this fact would be used against him if he was suddenly at sentencing. And the constitutional concerns in determining whether something is a lesser-included is, does it put the defendant on notice so that he can prepare a defense and plan his strategies accordingly? Here, you know, defense counsel clearly articulated in her post-trial motions, we were hampered in our ability to prepare our defense and to plan our strategy. We asked for involuntary manslaughter based on a belief that it was a Class III offense. That's what we knew it to be. We had no reason to believe, no reason to know, based on the language in the indictment, that at sentencing he was suddenly going to be subject to a higher range of penalties. And it's not something that can be just described as a sentence enhancement, because while this is not an Apprendi case per se, the constitutional underpinnings of Apprendi do apply here. And Apprendi has rejected a distinction between a sentence enhancement and an element. When something increases the range of penalties for offense for which you've been convicted, it is an element of the offense. Ms. Althoff, was there any question as to whether Joy was a household member? Well, that is found by the court. I think you cannot look at the evidence as it came out in trial to determine whether it is a lesser included offense, because the defense had no opportunity to defend against that charge. What I'm getting at is the involuntary manslaughter statute states that in cases involving involuntary manslaughter in which the victim was a family or household member, the penalty shall be a Class II felony. And I think part of the state's argument is somewhat invited error. You asked, and you did have the right, as you've already indicated, to ask for involuntary manslaughter. But you're saying we had no way of knowing. That's why I'm wondering if it is not in dispute that Joy was a household member, the only involuntary manslaughter that was available to the defendant would have been the Class II felony version because it said shall. It seems that some of your argument is, well, we didn't know. We said involuntary manslaughter. We were premising this on getting to Class III. That was trial strategy. But it says involuntary manslaughter shall be a Class II if there's a household member involved. And that's why I'm wondering if there was any dispute, really, that Joy was a household member. It was not disputed. That's true. So isn't that invited error, then, to say, well, we asked for involuntary manslaughter. We were expecting a Class III, and it couldn't be anything but a Class II if there was a household member involved. The wording of the statute says shall. Well, I think there are other offenses that require a penalty, you know, for certain conduct. But that conduct needs to be charged so the defendant has opportunity to defend against that conduct and needs to be proven beyond a reasonable doubt. But the defendant asked for the instruction. The defendant asked for involuntary manslaughter. He asked for involuntary manslaughter. And now you've indicated to the court that there was no dispute, there was a household member involved. The only thing they could have possibly been asking for under that scenario is the potential for a Class II felony. The only thing that the state could ask for? No, the only thing the defendant could have been possibly asking for at the moment that they requested an involuntary manslaughter instruction was the best hope they had was Class II. You just told us that everybody knew that this was a household member involved. There's no discretion in the sentence of that with the shall language. But if you're looking at the facts as they're presented at trial to determine whether it's a lesser included offense, that approach has been rejected. And I think to look at the facts as they've been presented at trial and use that against him now, Robinson had no opportunity to defend against that. And he may not have testified. He may not have had his mother testify. He put the state to its burden as to her purported status as a household member. He could have challenged evidence of references that came out regarding the 9-1-1 tapes as hearsay. There are a lot of things that he could have done, that his counsel could have done. And to look at the evidence now where he had no reason to know that this was going to be used against him and to use that against him suddenly at sentencing is unfair. And to say that it's just a single offense with two potential penalties puts the burden on the defendant to guess which they're going to seek and to make strategic decisions. And the key strategic decision in this case articulated by defense counsel was we decided to go for involuntary manslaughter based on the knowledge. And we didn't have a reason to ask for outright acquittal. We might have otherwise asked for outright acquittal as opposed to go for the higher sentencing range of two to 14 years. It is the state that has... It's essential to your argument, though, that we determine that involuntary manslaughter of a household member is a separate and distinct offense from involuntary manslaughter. That it is a separate and distinct, yes. That is essential to your argument. Correct. If we determine that it is one offense and that the household member is an enhancement, how does that impact your argument? Well, I don't think it can be characterized as an enhancement because I think that sort of distinction has been rejected by Apprendi. And if we look at the impact that the additional fact has, which is to does it increase the sentencing range in a class offense, it is an element of the offense. And that's exactly what happened in this case. He was convicted of involuntary manslaughter, and this additional fact increases sentencing range. And it is the prosecution that has the duty to manage the criminal prosecution, to initiate the charges. And to ship that burden to the defendant, as happened in this case, is a violation of his due process. Because you can't put a defendant on, you can't require a defendant to guess which way the state is going to go. And I would just like to address a recent case, People v. Davis, in which a similar claim was brought before this court. And in that case, the defendant did also make the claim that his conviction, he was convicted of an uncharged offense based on involuntary manslaughter of a household member. This case is very different from what happened in Davis. Because, and in that case, this court didn't reach the question of whether involuntary manslaughter of a household member was a lesser included offense of murder, because it found the defendant failed to show that there was any prejudice. In that case, the trial court put the defendant on notice before he instructed the jury that he would get this additional element, that he would be subject to punishment, based on this additional fact. Defense agreed to it and still asked for the involuntary manslaughter. The court convicted him and imposed sentence. There was no objection. It was never raised until the first time on appeal. And the defense counsel never articulated what he would have done differently. Here, William Robinson did not have any notice until sentencing. Had never had a chance to argue the facts or change his strategy. Defense counsel objected at the earliest opportunity and articulated to the court exactly what was, how her strategy had been impacted by this additional factor. Because William Robinson was convicted of an uncharged offense, he was hammered in the way he could present his defense and in his strategic decisions. Not only did the court impose sentence and conviction on the uncharged offense, but William Robinson has fully served that 12-year term for involuntary manslaughter of a household member. So the relief that we would ask for in this case is that his Class 2 offense be reduced to a Class 3 offense. Thank you. Mr. Chief Justice, Honorable Justices of the Court, Counsel, Assistant State's Attorney Noah Monaghan on behalf of the people on this matter. Your Honor, this matter comes before this Court today because back in 2001, this defendant escorted his girlfriend Joy Jefferson back to his apartment. The two engaged in sexual intercourse. They were interrupted by a phone call. This phone call came from another woman. This phone call was from someone who defendant described as someone who, quote, wasn't my girlfriend like Joy was. She was just a girl I messed with, end quote. Joy got very upset by this phone call. She grabbed a shotgun. She went into the bathroom with the shotgun and closed the door. Defendant eventually gets upset himself. He demands the shotgun back. He goes into the bathroom. He takes the shotgun from her, and he ends up shooting her in the face and killing her. Now, defendant was charged with first-degree murder, and one of the things that's important to note here about the trial is that all the evidence, all the evidence at trial of what happened in that apartment that day, what the relationship was, and what happened in that bathroom, especially the one and only occurrence witness in this case was defendant himself. Everything that came out in this trial was from defendant's own admissions. There were no other witnesses in this trial. There were, of course, forensics and autopsy results and whatnot. But the one and only witness in this case was defendant himself through his own admissions. At the end of trial, defendant asked, of course, the court for a conviction of involuntary manslaughter. The trial court agrees. And at sentencing, the trial court finds that there is, quote, overwhelming evidence that the victim in this case was a family or household member and sentences defendant to the Class II offense and gives him 12 years. Now, this one thing to note about this case is that it is not a novel case. The case of People v. Davis presents in all relevant ways the same scenario, the same situation, the same arguments, and the same allegations. And, in fact, Davis, while in its opinion, in this court's opinion in Davis, this court limited its language and limited its discussion to whether or not there was prejudice in that case. That case is, in fact, dispositive here. And the reason is because of this court's prior precedent on the same matter, subject matter, such as this court's decision in People v. Baldwin, something that both parties here have cited to say that you cannot be convicted of an uncharged offense. And so when this court affirmed the defendant's conviction in Davis, and even doing so on a limited basis, this court, in order to reconcile the affirmation of the conviction in Davis with its prior decision in People v. Baldwin, must be seen as finding that there was an actual charged offense in that case of People v. Davis. Now, obviously, the appellate court did not rule on this basis. What the appellate court did was to look at this court's prior decision in People v. Green. Obviously, Green is a wholly different case with a different procedural setup and everything. But what the court found, the appellate court here found, was that in Green, this court's analysis of the robbery statute was very instructive here because the robbery statute and the involuntary manslaughter statute have roughly the same setup. They both lay out an offense, they both lay out a baseline sentence, and then they lay out sentences where enhancement factors are met. And this court in Green looked at the robbery statute in light of an argument that there were multiple robbery offenses and rejected that argument. It said, no, there's only one offense of robbery, and it's obvious from looking at the statute. And the appellate court made the same analysis here and adopted that analysis of the involuntary manslaughter statute because there is. There's only one involuntary manslaughter statute, and defendant asked for it here. And it's important to see defendant's entire argument rests on the fact that there are, he says, two involuntary manslaughter offenses. Because he concedes, I was properly convicted of involuntary manslaughter. So defendant needs for there to be two involuntary manslaughter statutes, but the way the statutes are set up under Illinois law, there is only one offense of involuntary manslaughter. Now, if this court were to look at this case as if there were two involuntary manslaughter statutes, the fact remains that defendant received sufficient knowledge of both, of any involuntary manslaughter statute that could be presented here. And the reason is that when the indictment in this case said that defendant was being charged with the death of Joy Jefferson, defendant was given more than sufficient notice that he was being charged with the death of his girlfriend. Just as the defendant in Davis was on notice to being charged with the death of his child, so too was the defendant here being on notice with being charged with the death of a family or household. Mr. Montague, had this case gone to a jury in order to get a sentence, the instructions would have had to have included the additional factor of a household member and the issues that the jury would have found on would have had to include that. Is that not correct? Actually, Your Honor, well, that did happen in slightly different circumstances in the case of People v. Thoreau. Obviously, the conviction was affirmed by this court because it was harmless error. And this court, again, in Davis, looked back at that and said, Davis is not an Apprendi case because if it was, Thoreau would take care of that anyway. But the people cited in their brief on page 25 a case called Blakely v. Washington. It's a United States Supreme Court case, and it addresses something similar because what Blakely said was that the U.S. Supreme Court said, our precedents make clear that what the maximum sentence in any given case is, and that's an important bit of language because that's what we're talking about here. Defendant is asking not that his conviction be overturned, but that he get the lesser of two possible sentences. So we're talking about really here what is the maximum possible sentence that this defendant could rightfully get. Blakely said the maximum possible sentence someone can get is whatever the jury finds or whatever facts can be established by the defendant's own admissions. And I come back to what I said earlier, which is that all the evidence in this case, that established the offense, were all from defendant's admissions. The relationship and the actions that led to her death were all from defendant's admissions. So under Blakely, I would argue that, no, even if the jury did not get the actual instruction element that says household or family member, this defendant could still be convicted under the ruling in Blakely. Now, one additional matter I wanted to point out was that, as this case is also similar to Davis, it is also a case where prejudice must be shown. And the reason is because of this court's line of cases, which date back to Gilmore and the Illinois legislature's codification of Gilmore and on to People v. Quadrato, which say that if you're going to challenge an indictment, you must do it before trial, and if you don't do it before trial, you must show prejudice. And there is clearly no prejudice here, just as there is no prejudice in Davis. And one way to see this, of course, is to look at this issue, and the question is whether or not this is the defendant's girlfriend. And there is absolutely no question here whatsoever that this was defendant's girlfriend. And one way to see this is to look back and say, how many times has defendant had a chance to show, to tell a court, how I could show that this was not my girlfriend? There was the sentencing hearing, the post-sentencing motion, his opening brief in the appellate court, his reply brief, his oral argument, his PLA here, his brief here, his reply brief here, and his argument here. That's nine times. Nine times defendant has had a chance to tell a court how this was not his girlfriend and how he could say that this was not his girlfriend. And the only arguments that defendant has ever produced are those which he put into his reply brief on the bottom of page 13 and on to page 14 and repeated here today, which are, well, maybe I wouldn't call the mother or I would avoid asking the mother about the relationship. Well, that's an empty argument because the people have subpoena power and can call the mother and get her to testify. Defendant argues that, well, I could try and bar my statements to the 911 operator as hearsay. But, again, this is an empty argument. Statements by a defendant are clearly admissible as an exception to hearsay. Defendant offers up in his reply brief, well, I could cross the officers that first responded to my apartment because I told them also that this was my girlfriend. But, again, defendant doesn't say, well, what would you be looking for when you cross? He is effectively saying I would go on a fishing expedition in this cross-examination. So, again, this is an empty argument. The only thing that defendant proffers is, one, that he would not testify. But, again, look at this case. What evidence is there in this case? You have multiple statements by defendant. An admission to an assistant state's attorney and then a videotaped confession whereby he actually admits, this was my girlfriend and I did the acts that led to her death. Does the classification of someone as a girlfriend make them a family or household member? Under the statute, yes, it does, Your Honor. The statute says that anyone who has or has had, so it's at any time in the past, if you have had a dating relationship. And one important thing to look at. It's not the family, it's just the? You know, I don't believe the statute says which one is which. I would assume it's household member. Would it fall under the family prong or the household prong? I don't know that the statute differentiates between the two. I believe they're just lumped together without differentiation. Okay. Thank you. So, defendant may say that he would not testify. But if defendant did not testify, he would have no way of showing that he did not have the requisite intent here because he had multiple admissions to killing this woman, one on videotape and another to a state's attorney. Now, the only other argument defendant presents is he presents in his reply brief, well, maybe I could have shown that this was a casual sexual relationship and not a dating relationship. But it's important to look at that testimony I pointed out before about this other woman that called. It's on page ZZ206 of the record. Defendant says that this other woman, Angel Jordan, quote, wasn't my girlfriend like Joy was. She was just a girl I messed with. So in defendant's own testimony, under oath, he swore and said that this other woman was just a girl I messed with, but Joy was my girlfriend. He made a clear distinction between the one woman as a casual sexual relationship and the other woman as a girlfriend. So really, the only way defendant can now say that he could show that this was a casual sexual relationship is if that was, in fact, a lie. That's the only way to show. So the only offer, the only thing that defendant has truly offered in all this time, nine times litigating this matter, the only time he's ever, the only thing he's ever offered as to how this was not his girlfriend was that I either perjured myself before or I'd be willing to do it in a hypothetical retrial. So that, in fact, shows that he has no legitimate argument that this was not his girlfriend, and the reason is because it was his girlfriend. And the trial court found that clearly when it said there was overwhelming evidence. And it's also important to point out that the evidence which established the relationship in Davis is the exact same evidence you have here. Now, understandably, that was defendant's child in that case, but there were no DNA tests in Davis. There were no physical tests of any kind in Davis. The only thing that established that relationship in Davis were the admissions of the defendant and the testimony of the defendant's mother. That's it, and that's exactly what you have here. That's exactly what you have here. So defendant here cannot and could not under any circumstances show that this Joy Jefferson was not his girlfriend because she was. And obviously, just like in Davis, there is no prejudice here. And also it's important to point out that he made the fact that she was his girlfriend central to his defense. He didn't just offer it up out there out of platitudes or something of that sort. Furthermore, this case is a case of invited error. Defendant has said in his reply brief and repeated again here today that one of the things he might have done otherwise if he had gotten the notice that he feels that he should have gotten would be to ask the trial court for a judgment on murder, on the offense of first-degree murder. Well, that's exactly what the people want. The people ask for that from the time they charge first-degree murder, through opening, through closing, through rebuttal closing. That's all the people ask for. And but for his own actions, that's exactly what defendant would have gotten. So this is clearly a case of invited error. I guess that's one of the reasons I find it hard to see how the defendant was prejudiced here. He received an enhanced sentence of 12 years. That's correct. If he admitted to shooting Herbert the shotgun in the face, if the murder charge had stood, then that was a minimum of 20 years. That's correct. That's correct. He was facing 20 to 60 years. And obviously defendant has argued, well, maybe I would have been acquitted. But again, you know, you look at the evidence and it is what it is. And especially as defendant espouses, he wouldn't have testified. Well, then if defendant didn't testify, there would be no way of obviating what was clearly his intent in this case. Your Honor, for those reasons and the reasons stated in the people's brief, we would ask that you affirm defendant's conviction and sentence. Thank you. Thank you, Mr. Madigan. Ms. Holtoff. The question here is whether William Robinson was convicted of an offense with which he was not charged. To determine whether, unless it was a lesser included offense. Counsel, if I may, following up on Justice Freeman's most recent questions, was the asking for the involuntary manslaughter finding by the court, did that result in invited error for the claims you're making today? The fact that he asked for involuntary manslaughter, that's all he asked for, involuntary manslaughter. And he has every right to do so. If the state wants the Class II offense and penalty available to it at the time of sentencing, it must charge it as such. And again, back to Justice Freeman, the maximum sentence that could have been imposed on the Class II felony was 14 years. In fact, 12 was the sentence. And the minimum sentence on first-degree murder would have been 20 years. Correct. Indeed, maybe you know the answer to this, because I'm not sure. First-degree murder is 100 percent truth in sentencing crime, is that correct? Right. And the involuntary manslaughter would be something less than that. Right. I don't know if it's 85 percent or 12 percent. Right, 85, I believe, yeah. But again, in judging the difference between the two penalties, you could consider the impact of truth in sentencing, couldn't you? You could, yeah. Yes, and he wouldn't consider that impact. I mean, that is a decision, whether to go for outright acquittal, whether to ask for the lesser Class III offense. That is a decision that belongs to William Robinson, and he has a right to make that decision based on knowing what he will be subject to if he does ask for the lesser offense. It would have been a totally reasonable strategy for him, in this case, to ask for outright reversal or outright acquittal, as he was acquitted of first-degree murder. He chose, based on the knowledge that this was a Class III offense, to ask for the lesser offense of involuntary manslaughter. And that is a decision William Robinson was not able to make, a fully informed decision when he was engaging in that strategic decision. And as to all the facts that were listed at trial concerning her status as a girlfriend, we don't look at the facts as they come out at trial in determining whether something is or is not a lesser-included offense. Because, obviously, they can't contest that after the fact at the time of sentencing. At that time, it's too late. The key strategic decision that was articulated here by defense counsel was the fact that she decided to go for the lesser offense of involuntary manslaughter. She also decided to waive her right to a jury. And she could have, you know, if she had had some notice, she may have argued whether this qualified under the statute as a household member. All these strategic decisions were removed from him. And so the mere fact that evidence came out at trial that he was, that George Jefferson was purportedly his girlfriend is not the proper analysis. We look at how it's charged. Did he have notice? Was he able to make strategic defenses, strategic choices, and prepare his defense? Going back to an earlier question, I believe Justice Garmon, this Court does have to agree with your argument that there are two involuntary manslaughter offenses. Right. Right. Because otherwise, if we don't agree with that premise, then the argument fails, right? Because the involuntary manslaughter request was made after the evidence was in and after the evidence presumably showed that the girlfriend was a family member, right? Right. Okay. Right. I don't recall whether the brief discussed people versus green. How do you distinguish green from this case? I thought green answered the questions that your position that you raised here. Green held that robbery was not a separate and distinct offense from a robbery of a person over the age of 60 for purposes of naming it and identifying it in the verdict form. But in green, the additional fact that the victim was over the age of 60, was charged, defendant had notice of it, it was presented to a jury, and proven beyond a reasonable doubt. The only place where it was missing was in the verdict form. And so the fact that robbery in the verdict form is the same offense of robbery of the person over the age of 60 as it's identified in the indictment and as it had been submitted to a jury. Here you have much more fundamental principles at stake where he never even received notice of this additional fact. There's nothing in the statute, and this is why it has to be a separate offense, nothing in the statute. You can't just look at the statute and the defendant be able to figure out the state's intent. The statute doesn't apprise William Robinson of whether the state intends to seek an enhanced offense. So he's going to decide whether to ask for involuntary manslaughter, waive a jury, any strategic decision based on a guess of what are they going to do with sentencing. And this is exactly why due process requires that notice which exposes defendants to additional punishment be given, be put forth in the indictment so that the defendant can put forth a defense, make important strategic decisions. And I don't think we can minimize the importance of his decision to ask for a lesser offense of involuntary manslaughter when you have a difference of a range of two to five years, which is what he was convicted of, and then all of a sudden it's sentencing the first time, a sentencing range of three to 14 years, and he never had any opportunity to defend against that, to argue it to a jury, or to say I'm going for outright acquittal, which was a decision that really does belong to the defendant, whether he had a good chance of acquittal or not. That is his decision, which he did not have an opportunity to make in a fully informed nature in this case. If there are no other questions, thank you for your time, and ask that you reduce his offense to a class three offense. Thank you, counsel. Thank you. Case number 105-206, People v. William Robinson, will be taken under advisement.